FEDERAL DEPOSIT INSURANCE CORPORATION, PLAIN-TIFF-APPELLANT, v. VIOLETTA S. MILLER, DEFEND-ANT-RESPONDENT.

Submitted May 28, 1943—Decided September 16, 1943.

For the appellant, *Grover C. Richman.*

For the respondent, *William C. Gotshalk.*

The opinion of the court was delivered by

HEHER, J. Plaintiff sued upon a promissory note in the principal sum of $1,000, made by defendant and one John H. Carroll to Victory Trust Company, of Camden, under date of November 3d, 1930. It was alleged that the payee transferred the note by delivery to West Jersey Trust Company, and that the latter transferred it by endorsement to plaintiff. The answer admitted the execution of the note, but pleaded payment. It was averred that defendant was an accommodation maker for Carroll, to the payee's knowledge; that Carroll later posted 98 shares of the capital stock of the Carroll Realty Company as collateral security, primarily for the payment of this particular obligation and secondarily for the payment of "any other obligations which the bank might have;" and that the collateral was sold for a price in excess of the amount due on the note in suit.

It was proved that on January 27th, 1931, Carroll executed and delivered to Victory Trust Company an agreement pledging the shares of stock of the Carroll Realty Company and 68¾ shares of stock of the Broadway-Merchants Trust Co. "as collateral security for the payment of any liability or liabilities" of his to said Trust Company, whether direct, indirect or contingent, primary or secondary, then existent

or thereafter arising, with full power of sale in the event of default in payment and authority to apply the net proceeds of sale to the payment of "all or any of said liabilities to said Trust Company, or its assigns, as its president or treasurer, or its or their or either of their assigns, shall deem proper;" also, that Carroll was then indebted to the Victory Trust Company upon three other promissory notes, and later became indebted to it on two additional notes, to none of which was defendant a party; and that on or about November 12th, 1937, the West Jersey Trust Company, the holder of all of the notes, including the one in suit, sold the collateral for $850, and credited the net proceeds of sale upon notes of Carroll other than the note in suit. But defendant testified that she was a mere accommodation maker of the latter note, and that on November 3d, 1930, when the note was executed, Carroll undertook to deliver to her the shares of stock of the Carroll Realty Company as collateral security for that particular obligation, and some time thereafter actually delivered the stock to her, and that she then turned it over to the Victory Trust Company with the intimation that Carroll "gave me this as collateral for the loan" represented by the note in suit. She said that this transaction was had with "Mr. Di Paola or Mr. Bowen," representing the bank. Di Paola, who was president of the Victory Trust Company, was not called as a witness; and Bowen, who was secretary and treasurer of the company, called as a witness by plaintiff, testified that this stock and the shares of the Broadway-Merchants Trust Company were delivered in response to his demand of Carroll for security "to protect the bank loans that were then outstanding." He apparently had no recollection of an understanding with defendant that the security was first to be applied to the satisfaction of the note in suit, or of a conversation having that as the subject-matter; at least there was no direct contradiction of defendant's testimony in this regard. Plaintiff contended that the unpaid principal amounted to $345, and the accrued interest to $225.47, or a total of $570.47.

The sole issue submitted to the jury was that of payment *vel non, i. e.,* whether the sale of the capital stock of the

Carroll Realty Company operated as a liquidation of the note in suit. There was a verdict for defendant.

It is assigned for error that the trial judge instructed the jury as follows:

"Now I may say to you that the burden is upon the plaintiff in this case to satisfy you by the greater weight of the believable testimony as to the truth of its allegations and the only question as I have indicated to you is the pledging of this particular stock, whether it was pledged as collateral for all indebtedness of Carroll or only for this one note upon which Mrs. Miller appears as a maker. By that burden of proof is meant not necessarily the greater number of witnesses. It means the quality of the testimony rather than the quantity of it, but, however, that burden remains upon the plaintiff, and if the plaintiff has so satisfied you by the greater weight of the believable testimony as to the truth of its allegations then it is entitled to a verdict in the sum of $570.47."

This constituted a misdirection in matter of substance. It placed upon plaintiff the *onus* of proving non-payment of the note. That is the plain purport of the terms used. Plaintiff's possession of the note raised a rebuttable presumption of non-payment. Under *R. S.* 7 :2–24, proof and offer of the subject note established a *prima facie* case. Payment is essentially an affirmative defense; and the burden of proof is on him who pleads it. *Fein* v. *M'eier,* 71 *N. J. L.* 12; *affirmed,* 74 *Id.* 597; *McCormick* v. *Williams,* 88 *Id.* 170; *Trustees System Co.* v. *Lisena,* 106 *Id.* 549; *Benjamin* v. *Blake,* 121 *Id.* 10.

Pointing out that the note does not bear the endorsement of the West Jersey Trust Company, defendant maintains that plaintiff is not "a holder in due course," but has the mere "naked possession" of the instrument, and therefore "the over-all burden of proof rested with plaintiff." Even so, that does not serve to vary the application of the general rule of evidence that the party pleading an affirmative defense has the burden of proof.

Although in this view it is unnecessary to pass upon the question, we deem it advisable to say that plaintiff is assess-

able with costs in the event of an adverse judgment. It is endowed with power "to sue and be sued, complain and defend, in any court of law or equity, State or Federal." 12 *U. S. C. A.*, § 264. This normally includes "the natural and appropriate incidents of legal procedure," one of which is the payment of costs by the unsuccessful litigant, "awarded by the court in the proper exercise of the authority it possesses in similar cases." *Reconstruction Finance Corp.* v. *J. G. Menihan Corp.*, 321 *U. S.* 81; 61 *S. Ct.* 485; 85 *L. Ed.* 595.

The judgment is accordingly reversed, and a *venire de novo* is awarded; costs to abide the event.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, PORTER, COLIE, DEAR, WELLS, RAFFERTY, HAGUE, THOMPSON, DILL, JJ. 16.